### 33483. ARMOUR & CO. *v.* LITTLE.

Decided April 25, 1951.

*R. D. Smith,* for plaintiff in error.

*Robert R. Forrester, John T. Ferguson,* contra.

TOWNSEND, J. (After stating the foregoing facts.) The applicable part of Code § 114-105 is as follows: "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, including . . wilful failure or refusal to use a safety appliance. . . The burden of proof shall be upon him who claims an exemption or forfeiture under this section." In consequence, the burden of proving that Little's failure to use the metal rake to disengage the meat from the machine was a wilful failure and refusal to use a safety appliance is upon the employer. *Shiplett* v. *Moran,* 58 *Ga. App.* 854 (2) (200 S. E. 449). Where the question is one of fact, the award will be affirmed if there is any competent evidence to sustain it (*Stapleton* v. *American Mutual Liability Ins. Co.,* 74 *Ga. App.* 86, 91, 38 S. E. 2d, 848; *Berry Bros. Brick & Tile Co.* v. *Holmes,* 57 *Ga. App.* 281 (1), 195 S. E. 223; *Austin* v. *General Accident, Fire & Life Assur. Corp.,* 56 *Ga. App.* 481, 193 S. E. 86), or if the evidence, construed in its light most favorable to the employer, would authorize the award (*Glens Falls Indemnity Co.* v. *Sockwell,* 58 *Ga. App.* 111, 114, 197 S. E. 647; *Merry Bros* v. *Holmes,* supra). But where the award is based upon an erroneous conclusion drawn from the facts and the law applicable thereto, then it is proper for the judge of the superior court to reverse the award and to enter the proper judgment under the law and the facts of the case. *Glens Falls Indemnity Co.* v. *Clark,* 75 *Ga. App.* 453 (43 S. E. 2d, 752); *Hall* v. *Kendall,* 81 *Ga. App.* 592 (1) (59 S. E. 2d, 421).

The director correctly stated in his opinion the following: "Wilful misconduct includes all conscious or intentional violations of definite law or rules of conduct, obedience to which is not discretionary, as distinguished from inadvertent, unconscious or involuntary violations." See *Aetna Life Ins. Co.* v. *Carroll,* 169 *Ga.* 333 (1) (150 S. E. 208); *Shiplett* v. *Moran,* 58 *Ga. App.* 854 (1) (supra). He also made a finding that "if the claimant had only exercised reasonable diligence he could have seen whether or not the machine had stopped before he put his hand under the machine to remove the meat," and it appears therefrom that he based his denial of compensation in part at least

upon the negligence of the claimant in failing to use reasonable diligence to see whether or not the machine was in operation, thereby violating an instruction to that effect given to him by Ozias. However, "The general rule is that mere violations of instructions, orders, rules, ordinances and statutes, and the doing of hazardous acts where the danger is obvious, do not, without more, as a matter of law, constitute wilful misconduct. . . Such violations or failures or refusals generally constitute mere negligence, and such negligence, however great, does not constitute wilful misconduct or wilful failure or refusal to perform a duty required by statute, and will not defeat recovery of compensation by the employee or his dependents." *Aetna Life Ins. Co. v. Carroll*, supra. The wilfulness contemplated by the statute amounts to more than a mere act of the will, and carries with it the idea of premeditation, obstinacy and intentional wrongdoing, so that the mere doing of a thoughtless act which does not constitute deliberate disobedience does not deprive one of compensation. See *Pullman Co. v. Carter*, 61 *Ga. App.* 543, 545 (6 S. E. 2d, 351). The evidence of Ozias, in its light most favorable to the employer, was that the employee, on the first day of his employment, was taken about a large room and the operation of the seven different machines therein was explained to him; that he was instructed not to stick his hand in the machine while it was in operation, and that the machine could hurt him; that he was further shown the rake and told that its purpose was to pull the meat off the tray. This testimony does not contradict that part of the claimant's testimony to the effect that the rake was never explained to him as *a safety appliance*, and Ozias himself, although he insisted that the claimant had been "introduced to the rake" would not swear positively that he picked up the rake and explained its purpose to the new employee. At most, then, a favorable construction of the testimony could only create a bare inference that the employee was ever instructed in the use of the rake as a safety appliance. His positive testimony that he never received any instruction concerning its use other than what Ozias might have given him that first morning is uncontradicted, and Ozias' own testimony indicates strongly that he was relying on his recollection of what it was his duty to explain to all new men rather than what

he actually did explain to the claimant on the morning in question, which was three or four weeks before the accident. Ozias did give the claimant specific instructions as to the machine he put him to work on. If he could not recollect exactly what he said to Little concerning the other machines, there is more than a strong probability that Little also could not recall all the details in connection with the various appliances on all the machines. Nothing in Ozias' statement refutes Little's positive testimony on this point, except to the extent that he was told that the purpose of the rake was to drag meat off the tray. Further, Little's testimony is uncontradicted that after he went around to the back of the machine and turned it off there was no sound and he was convinced that the machine had stopped before he put his hand under the hood. It is true that the shaft on the outside would have been in motion, but there is no testimony that anyone ever explained to Little that he should observe the shaft and that its motion would indicate that the knives inside the machine were moving. At most, then, the evidence shows only negligence on the part of the employee, and raises no inference whatever that this negligence had in it any element of perversity, obstinacy or intentional wrongdoing. Ozias' testimony that he could not swear to calling Little's attention to the rake, the utter unfamiliarity of the employee with the machine and the fact that he had not used it more than fifteen minutes during the entire month, entirely negative any elements of intentional or premeditated wrongdoing on the employee's part, and there is no evidence to support a finding that the failure to use the meat rake was wilful on his part.

Counsel for the employer strongly rely upon the case of *Liberty Mutual Insurance Co. v. Perry*, 53 *Ga. App.* 527 (186 S. E. 576), as does the director in his opinion. This is a headnote decision, and states in effect, that where a safety appliance is provided and easily accessible to an employee operating a machine, and its location is known to him, and he has received specific instructions not to operate the machine without the use of the appliance, failure to follow these directions constitutes a wilful failure or refusal to use the safety appliance. An examination of the record in that case reveals that the safety appliance concerned was a paddle for removing metal from a die

press; that the employee had been working at the machine for four years; that he admitted receiving specific instructions in the use of the paddle and also that the employer had printed instructions on its use pasted on the machine. Not only were the instructions specific and in plain view, but the length of time the employee had worked at the machine, together with his own admissions, negatived the proposition that he did not understand the use and purpose and necessity of the safety appliance. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Parks* v. *Maryland Casualty Co.*, 69 *Ga. App.* 720, 725 (26 S. E. 2d, 562). In the *Perry* case the uncontradicted evidence revealed that the employee was thoroughly familiar with the machine and instructions concerning it, from which evidence the director was authorized to find that the failure to use the safety device was wilful. In this case the uncontradicted evidence reveals that the employee was almost wholly unfamiliar with the machine, that any instructions he might have had were received a month previously, in connection with instructions on six other machines, and that these instructions as to the rake in question were not to the effect that it was a safety appliance, but were merely a definition of its purpose. The evidence here does not tend equally to sustain either proposition, but wholly sustains the proposition that failure to use the meat rake was due to lack of knowledge of the dangers incident thereto. As to the instruction to the employee not to lift the hood while the machine was in operation, he had turned the machine off and there is no evidence from which it might be inferred that he knew it was continuing to operate.

The trial court did not err in reversing the award of the director denying compensation and in remanding the case for the purpose of entering up an award.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*